I'm reserving five minutes for rebuttal. The Yakumoto reference does not disclose memory fall. There are two independent claims on appeal, Claim 21 and Claim 32. I'll begin by addressing Claim 32, which recites mixing polyol raw materials and green tea to make memory foam. I'll refer to this foam as green tea memory foam. Although Claim 32 also recites using this green tea memory foam to make a layer of a mattress, I'll focus first on the memory foam. But even if it was reticulated, open-celled formation of this foam, why couldn't that be a layer in a mattress? It doesn't have to be the entire load-bearing feature. It's just a layer. Why couldn't you have a reticulated open-cell foam as a layer in a mattress? You could, but it wouldn't be a layer of memory foam. Claim 32 recites memory foam. Reticulated foam is not memory foam. But why does the memory foam have to be in Yakumoto? Can't it be in combination with LEN for... Well, the examiner found that it was in Yakumoto. That was the reason for the rejection. By the way, it's a layer of a memory foam mattress. Why couldn't it still be a layer of a memory foam mattress? In other words, it is just saying it's a layer. Claim 32 recites mixing green tea to make memory foam. Then that memory foam is used to make a memory foam mattress. The memory foam has to be in... The green tea foam is just the top layer of a memory foam mattress. I'm looking at claim 32. I am looking at it. Green tea to make memory foam and then you use the green tea foam to make a memory foam mattress. It doesn't talk about the other layers. And in the combination of LEN and Yakumoto, there is no green tea memory foam layer. I mean, there is no green tea memory foam mattress. And Judge Hughes, the examiner said that he had two references and the Yakumoto reference was the reference that taught green tea memory foam. He said that the components in... Can you point to me to where that is in the record that the examiner relied on memory foam rather than just adding green tea to make a foam? The examiner said that the compositions were inherently memory foam and... What page is that? It's page 74, lines 10 through 12, and structurally identical to memory foam. That's A6, lines 12 to 13. That's just an error, a mistake. The mistake, I believe, is from the misconception of the word molding. The examiner thought that molding has something to do with mold. For example, in paragraph 17 of LEN, molded foam. Molding has nothing to do with mold. A molding is an extrusion with a constant cross-section. It's like the molding in the room. It creates filaments. It's like making pasta. You can make spaghetti, which is the filament, or you can make lasagna, which is the sheet state. You can make the composite where inside is a spaghetti and outside is a penne. It's all extrusions. Don't you still have the problem of example 18 of Yakumoto where they're talking about just reticulated open-celled foam? Example 18 is only talking about reticulated foam. The entire disclosure of Yakumoto is about the elution of a functional component, which can be T. As water or fluids flow through a filter, something is washed out. If it's the molding, which is very small filaments that create a non-woven mesh, that's one example. Why can't example 18 be used to create a memory foam? Because memory foam is not reticulated foam. You can blow through reticulated foam. Does your position rely on a distinction between open-cell and closed-cell foam? Yes. Where is that in your claim? No, the claim says memory foam and reticulated foam cannot be open-celled foam. So your position is that memory foam can never be open-celled? Correct. If that's incorrect, do you lose? Yes. Memory foam can never be reticulated foam. Are you aware of any instances where there's open-celled memory foam? It's definition, it can't be. Memory foam, so reticulated foam you can blow through. So you just go, it's a filter. I thought there was an admission that you had that memory foam could have an open-celled component. No, I believe there was a misrepresentation in the appellee's brief. Well, your brief, your blue brief at page 28 says memory foam is not entirely open-celled reticulated foam. Which suggests, not entirely, suggests that memory foam is partially made up of that type of foam. True. The point is whether some fluid can flow through it. So you can have some cells that are open, but if the majority of cells aren't open, fluid can't flow through it. So you can have reticulated foam that air goes through, or memory foam, can't go through. You might have a couple, that's what makes your hand, the famous ad, you can see that, it's a little bit. But air can't flow through this. You pour a pitcher of water on here, it's not going to go through. It's like on your bed, it just forms a puddle. So the entire disclosure of Akimoto is filters. And the foam in example 18 is suitable for making a filter. Still, Akimoto, without question, brings green tea into the polyol foam area, whether it's reticulated or non-reticulated. And then we have Lin that goes the rest of the way. Why isn't that combination enough to render you obvious? Two reasons. First of all, this court should look at the reasoning that the patent office used, not new reasoning. And the reasoning was that the examiner said that Akimoto teaches memory foam. And that was the basis for the combination. He said, she said, foam produced by Akimoto is used to make bedding materials. That's the reason to combine. And you have this reference with memory foam Akimoto, and then mattresses in Lin. And the examiner said it was the reference to bedding in Akimoto, which by the way had nothing to do with the foam part. That had to do with the molding part. And that was the reason to combine. I'm a little confused by that argument, frankly, because all that stuff up front seems to talk about various different detailed descriptions of the invention. It's not specifically under the foam examples. It's prefatory. So why doesn't it apply to all the examples, including 18? Because it says it only applies to molding. The, that example with the bedding, that paragraph starts with describing uses of molding. Can you tell us where, can you? That would be A184, column 13, around line 33. Examples for the use for which the molding, including composite molding. Composite molding is the spaghetti inside the penny. Are, you know, sheet cloths, flooring materials, filters, mattings. Those are all examples, and it has the powder puffs there too, of filters. The powder puffs are from example 18. True, and you can make a powder puff from the reticulated foam of example 18, or you can make it from the nonwoven fabric. But this example here on column 13 is only about molding. And the bedding there is, for example, the sheets. Can I ask you about, sorry, I don't mean to interrupt you, but on the gram factors, it's not clear to me what an ordinary, a person of ordinary skill in the art would be for this. Can you give me your, or give me, because you pointed out that it's not very clear. One of ordinary skill in the art would be one of ordinary skill of art of making foam mattresses. And why wouldn't somebody know that if you can put green tea in a foam that can be used for a mattress layer, that it could be combined with lint to make a memory foam layer? Because Akimoto doesn't say you can use it to put in a layer of a mattress. Akimoto has nothing to do with mattresses. But it said bedding materials. The bedding materials are materials like fabrics. There are non-woven fabrics that you use for sheets. It has nothing to do with a mattress. That's that example on column 13. So you make only foam. Well, if we disagree with you about that, if we find that the foam that's taught by Akimoto could be used as a mattress layer, even if it doesn't specifically include memory foam, is that in conjunction with lint enough to render you obvious? I would argue that Akimoto has nothing to do with mattresses. Well, I understand, but I'm asking you a hypothetical. If we disagree with that point and we find that Akimoto does teach a foam layer of a mattress, is that in combination with lint enough to make your patent obvious? Well, if Akimoto teaches a layer of a mattress, then for Claim 21, you don't need any other reference. That's an anticipation argument. That's just false. Well, I'm talking about your memory foam argument, though. For the memory foam, true, you need lint. That's right. Are there any further questions? Thank you, Mr. Wallace. Next, Ms. Simpson. Thank you, Your Honors. May it please the Court. The prior art in this case teaches making a green tea foam. It teaches that foam can be used in mattresses, and it teaches memory foam mattresses. The applicant here has sought claims that are directed to a green tea foam layer of a mattress. In light of these prior art teachings, the Board was correct in finding that these claims were obvious. Now, the examiner found that the bedding materials could include mattresses. We just heard Mr. Wallace say, no, that bedding material is only sheets and other linens. What's correct here? I believe that the examiner was correct in saying, kind of explicitly stated his current interpretation, that bedding materials would be broadly related to mattresses, cushions, and pillows. And actually, if you look at O's specification on A12, he would seem to use similar wording there. If you look at paragraph 17, he talks about how in his present invention, he can manufacture a foam that can be made into a pillow, cushion, or mattress. Then in the next sentence, he says the method provides a delivery mechanism for delivering green tea along with bedding products. So he uses bedding there in the exact same way that the examiner said you would use bedding in Okamoto. So I don't think there's any reasonable argument that bedding couldn't be read this broadly. I also wanted to point out that O on appeal continues to argue that the Okamoto reference should be read narrowly, and that example 18, even though it actually states foam is made, should not be read to mean foam because of other teachings in the reference. This is an unreasonably narrow reading that wasn't adopted by the examiner, wasn't adopted by the board, and that argument is correct. They're talking about in example 18, cosmetic puffs and filters, aren't they? Those are the two examples that they provide as what that foam could be used for. That's a different foam than a memory foam though, isn't it? What the examiner found was that the steps laid out in example 18 of Okamoto are the same steps that are recited in O's claims. And therefore, whatever Mr. O considers his memory foam to be, that would be the same thing you'd get by following the steps laid out in Okamoto. And I think to further elaborate, example 18 provides two possible uses of the foam, and you can imagine cosmetic puffs and filters that are very different structures, which would seem to suggest that example 18 is just teaching generally how to make a foam, which appears to be well understood in the art and known that these are two distinct uses. And so then the examiner found that if you look at a reference like Lynn that teaches you can use foam in mattresses, that there doesn't seem to be any reason not to be able to use Okamoto's foam as a mattress as well. I also wanted to pick up on Mr. O's arguments about claim 32. Mr. O distinguishes claim 32 from claim 21 for the first time really in his reply brief. In his original brief to the board and in his opening brief to this court, these two claims were argued together, and they were characterized as having a green tea layer of foam in a mattress or in a memory foam mattress. This is the argument that the board responded to in its opinion. And to the extent the claim means something else, Mr. O should have made that argument earlier. So the board was correct in its findings in this regard as well. If the court has no further questions, I'll rest on my briefs. Thank you. Thank you, Ms. Simpson. Mr. Wallace, you have four minutes. The solicitor just argued that the reason that Okamoto teaches memory foam is because there are steps in example 18, and those steps are the same as in the specification. That's just wrong science. All of that is isocyanate with polyols, and that makes many different kinds of foam. That statement would suggest that all polyurethane foam is the same. But as I just showed you, you can make many different types of things out of polyurethane. I mean, you can even make hardwood floors, artificial hardwood floors, skis, garden hoses, and the different kinds of foam. So the foam in Okamoto is definitely not memory foam, simply because you're putting a foaming agent with polyurethane polyol. I mean, there's tons of patents on memory foam, and there's a lot of money in it, because memory foam is different than other types of polyurethane foam. There's HD foam, high-density foam. There's the regular polyurethane foam. Those are all very different. So the argument by the patent office is just not based on any evidence at all. It's just wrong science. The second argument was that the appellant waived the right to say that Claim 32 recites memory foam and that the solicitor hasn't argued that Okamoto teaches memory foam because it doesn't. But the reason for the original rejection by the examiner was that Okamoto teaches memory foam. That was false. The appeal board took that reasoning over. All the way through, even in our blue brief, we argue that Okamoto does not teach memory foam. That's not relevant for Claim 21. That's relevant for Claim 32, and they were arguing this too. So the argument that the appellant waived that right is incorrect. Any questions? Thank you, Mr. Wallace.